Date signed August 16, 2007



NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| In re: | * | |
| LLOYD E. MITCHELL, INC. | * | Case No. 06-13250-NVA |
| | * | (Chapter 11) |
| Debtor | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF ORDER GRANTING, IN PART, THE JOINT
MOTION [271]OF THE DEBTOR AND OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR ORDER (I) APPROVING DISCLOSURE STATEMENT (II)
ESTABLISHING A RECORD DATE FOR VOTING ON THE PLAN; (III)
ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR HEARING ON
CONFIRMATION OF THE PLAN; (IV) APPROVING SOLICITATION PACKAGES
AND PROCEDURES FOR CIRCULATION; AND (V) APPROVING FORMS OF
BALLOTS, MODIFYING BANKRUPTCY RULE 2019, AND ESTABLISHING
PROCEDURES FOR VOTING ON THE PLAN, AND SUSTAINING IN PART, AND
OVERRULING IN PART, MARYLAND CASUALTY COMPANY'S [287] AND
ONE BEACON INSURANCE COMPANY'S [289] OBJECTIONS THERETO**

Lloyd E. Mitchell, Inc., the debtor herein (the "Debtor") and the Official Committee of

Unsecured Creditors (the "Committee") are the joint plan proponents (the "Joint Proponents") of

a chapter 11 plan.  The bankruptcy case involves approximately 19,000 asbestos claims lodged

against the Debtor.  The instant motion asks the Court to establish pre-confirmation solicitation and

voting procedures. (The motion also asks the Court to determine the adequacy of the Joint

Proponents' disclosure statement, but it was determined at an initial status conference that the

procedures aspects of the motion would be taken up first, and that the disclosure statement would

be addressed at a later time.[1]  The Court conducted a hearing on the instant motion on July 18, 2007.

The parties who appeared at the initial status hearing and the parties who appeared at the July 18th

hearing on the motion are identical- - the Joint Proponents and two of the Debtor's insurance

carriers: Maryland Casualty Insurance Company ("Maryland Casualty") and OneBeacon America

Insurance Company ("OneBeacon").  The Court notes, but does not address here, that the subject

of coverage for asbestos claims appears to be in dispute.[2]  Maryland Casualty and OneBeacon object

to the Joint Proponents' solicitation and voting procedures and the Court addresses those objections

herein.

　　With the agreement of the parties, the following papers were considered at the July 18th

hearing: [271] The Joint Motion of Debtor and Official Committee of Unsecured Creditors for

Order: (I) Approving Disclosure Statement, (II) Establishing a Record Date for Voting on the Plan,

(III) Establishing Notice and Objection Procedures for Hearing on Confirmation of the Plan, (IV)

---

[1]An initial status hearing conducted by this Court on June 8, 2007.  At that hearing it was
determined that solicitation and voting procedures, but not the adequacy of the disclosure statement,
would be considered at a hearing to be held on July 18, 2007.

[2]In order to resolve these issues, Maryland Casualty filed an Adversary Complaint [225] (the
"Adversary Complaint") against the Debtor for Declaratory Relief, Breach of Contract, Reimbursement
and Other Relief, thereby instituting adversary proceeding no. 07-0230. The Adversary Complaint
contains nine counts including claims for declaratory relief that the Debtor breached the insurance
policies by not consummating the Buy Back Agreement (as defined *infra*), as well as coverage-based
claims including various declarations with respect to Maryland Casualty's rights and obligations under its
insurance policies with the Debtor. This Court abstained from hearing the Adversary Complaint on the
basis that, inter alia, there was a pending case in the Circuit Court for Harford County, Maryland.  When
this Court declined to reconsider its abstention, Maryland Casualty appealed that denial to the United
States District Court for the District of Maryland *sub nom.*, *Maryland Casualty Co. v. Lloyd E. Mitchell,
Inc.*, 07-11622-AMD.  This appeal remains pending.

Approving Solicitation Packages and Procedures for Circulation, and (V) Approving Forms of

Ballots and Modifying Bankruptcy Rule 2019 and Establishing Procedures for Voting under the Plan

(the "Procedures Motion"), [287] Maryland Casualty's Objections to the Procedures Motion, [289]

OneBeacon's Joinder in Maryland Casualty's Objections to the Procedures Motion, and [307] Plan

Proponents' Reply to Maryland Casualty Company's Objection to the Procedures Motion. The

matters were briefed and argued comprehensively by the parties.

By way of background, it is important to note key features of the proposed plan. Even

though this is an asbestos bankruptcy case, it does not fit neatly into the mold that has come to be

associated with large, complex chapter 11 asbestos cases. This case does have some of the same

features - - most notably thousands of personal injury claimants whose claims are unliquidated.

What sets this case apart is the manner in which the Joint Proponents are choosing to resolve those

claims. The Joint Proponents are not seeking the benefit of a "channeling injunction" under §524

(g) of the Bankruptcy Code. The Joint Proponents are not setting up a trust. There are no pre-set

"disease levels" with corresponding  claim amounts under this proposed plan, and there will be no

distribution pursuant to trust distribution procedures ("TDP").   Instead, the Joint Proponents are

seeking relief that, in this Court's review of asbestos cases, is relatively unique; the Joint Proponents

propose that  all of the asbestos claimants be sent back to the state court system in which they

initiated their claims (lawsuits) for the purpose of liquidating them.  Thus, under the proposed plan,

the Bankruptcy Court will take up for determination the approval of the overall administrative

process by which this estate is liquidated, but the Court will not be involved in the individual claims

allowance process.  Although the Court is not approving the proposed plan at this phase of the case,

certain plan concepts will have bearing on the type of pre-confirmation solicitation and voting

3

procedures that are appropriate.   The Court must determine procedures that are fair and balanced,

in the context of, among other things, a proposed plan under which personal injury claimants will

return to state court, and the Bankruptcy Court is not involved in the liquidation of the individual

claims.

As the Court will discuss in detail below, Maryland Casualty and OneBeacon (together, the

"Objectors") raise seven categories of objections to the Procedures Motion. As an initial matter,

however, the Joint Proponents challenge the standing of Maryland Casualty to object to the

Procedures Motion.

The Joint Proponents argue that Maryland Casualty has attempted to acquire standing

disingenuously by claiming that its actions are designed to protect the personal injury asbestos

claimants - the very claimants whose claims could be covered by Maryland Casualty insurance. The

Joint Proponents argue that Maryland Casualty's real purpose in objecting is to protect itself from

paying claims by throwing up road blocks to confirmation of the plan.  The Joint Proponents suggest

that Maryland Casualty hopes to preclude the Debtor from confirming any plan that is not predicated

upon a pre-petition buy back agreement that existed between the Debtor and the insurer. The buy

back agreement was the subject of litigation in the Circuit Court for Harford County, Maryland that

was pending at the time the Debtor filed its chapter 11 petition in this Court.[3]  In addition, the Joint

Proponents believe that the asbestos claimants generally are represented by counsel and/or the

---

[3] The Committee alleges that on May 31, 2006 the Debtor entered into an agreement with Maryland Casualty pursuant to which Maryland Casualty would buy back a series of insurance policies from the years 1961 through 1977 (the "Buy Back Agreement") *See* docket entry [31].   Pursuant to the Buy Back Agreement, the Debtor would receive $18 million to release Maryland Casualty for its obligations under the policies.  Although the Debtor initially sought approval of the Buy Back Agreement in this Court, the Debtor changed its position and withdrew its support for the Buy Back Agreement.  On January 22, 2007, the Debtor withdrew [199] with prejudice its Motion to Approve Settlement Agreement with Maryland Casualty.

Committee and can speak for themselves.

Maryland Casualty argues that an insurance company acquires standing to raise objections when a proposed plan is not "insurance neutral" and that this proposed plan is not "insurance neutral." For a plan to be "insurance neutral" it must affirm the pre-petition contractual obligations of the insurer without impairing the rights of the insurer or increasing its burden. *See In re Combustion Engineering, Inc*., 391 F.3d 190, 218 (3d Cir. 2005). Under Third Circuit jurisprudence, it is not necessarily the ownership of a claim, but the impairment of rights that is significant for standing. In other words, if the proposed plan purports to diminish the property of the insurers, increase their burdens or impair their rights, the insurers would have standing. *Id.* at 218. The Joint Proponents maintain that, even so, standing is not acquired wholesale, but must be determined on an issue-by-issue basis. *Id.* at 215.

It is undisputed that Maryland Casualty is a creditor in this case. Maryland Casualty filed a proof of claim (proof of claim number 10) in the approximate amount of $16.8 million. In addition, Maryland Casualty is the sole member of Class 4 of the proposed plan. As to those types of objections that affect the entire creditor body, *e.g*., the coordination of confirmation hearing dates and objection deadlines with confirmation discovery cut-off dates, Maryland Casualty undoubtedly has standing.[4]

It is questionable that Maryland Casualty has standing to raise issues relating to the voting by asbestos personal injury claimants whose claims are contained in Class 3, a class of which Maryland Casualty is not a member. No Class 3 member has come forward to lodge an objection

---

[4] Whether standing is conferred upon an insurer based on the "insurance neutrality" of a plan is an issue which is best left for confirmation when the substantive provisions of the plan are at issue.

to the proposed procedures.  However, the Committee, which is comprised of asbestos claimants

through their estates and lawyers, and which has a fiduciary duty to the interests of the Class 3

creditors, is a co-movant of the Procedures Motion.[5]  Notwithstanding, Maryland Casualty is at least

a creditor and the Court permitted both Maryland Casualty and OneBeacon to participate fully in

the hearing on the Procedures Motion and now addresses each of the insurers' seven groups of

objections *seriatim*.

> 1.    In the Circumstances of this Case, It Is Not Improper to Allow
>        an Unscheduled Class 3 Claimant to Cast a Ballot Without Having
>        Filed a Proof of Claim and the Court Need Not Make a Finding at this
>        Juncture that a Ballot Serves as a Proof of Claim

The Joint Proponents propose in the Procedures Motion that Class 3 claimants may cast a

vote on the plan even if they have not filed a proof of claim in the bankruptcy case.  The Objectors

challenge a procedure that permits a claim to be voted if it has not been the subject of a proof of

claim filed in the bankruptcy case or has not been scheduled by the Debtor.  The Objectors maintain

that claimants should not be allowed to vote (or their claims should not count) unless they have filed

a proof of claim.  As noted earlier, more than 19,000 unliquidated claims are asserted against the

---

[5] The Joint Proponents have also raised objections with respect to OneBeacon's standing to object to the Procedures Motion. *See* Joint Motion [300] to Strike (1) OneBeacon America Insurance Company's Initial Objections to Debtor's Proposed Disclosure Statement and (2) OneBeacon America Insurance Company's Joinder in Maryland Casualty Company's Objection to Solicitation, Tabulation and Voting Procedures Proposed by the Debtor and the Committee and Response [308] of OneBeacon thereto. Neither of the foregoing papers was noticed for hearing at the July 18, 2007 hearing and the parties agreed that these papers would be heard at a later date, without prejudice to any party or any issue presently before the Court.  OneBeacon admits that it is not a creditor of the Debtor, and indeed has not filed a proof of claim in this case, is not scheduled, and is not classified under the proposed plan. Accordingly, OneBeacon could not acquire general standing as a creditor in the same manner or to the same degree as Maryland Casualty.  However, because OneBeacon did not file a substantive objection of its own to the Procedures Motion, but instead merely joined in the objection of Maryland Casualty, the parties agreed that, for the purposes of determining the Procedures Motion only, that OneBeacon would be permitted standing to adopt Maryland Casualty's arguments without prejudice to a later determination of its standing to make those arguments.

Debtor based on asbestos exposure.  Under the proposed plan, each of these is classified as a Class

3 claim.  No bar date has been established and these claimants have not been required to file a proof

of claim by any date certain in this case.  The only asbestos claimants who have filed proofs of claim

in this case are claimants whose claims are the subject of pre-petition settlement agreements that

were not funded due to the Debtor's bankruptcy.  This handful of claimants is separately classified

in Class 2.

As also noted earlier, the proposed plan does not contemplate that Class 3 claims will be

liquidated in the Bankruptcy Court - - these claims will be returned to the state court system to be

litigated.  Accordingly, the filing of proofs of claim in this case would not serve the traditional

purpose for the filing of proofs of claim in a bankruptcy case - - to initiate the claims allowance

process. The Objectors believe that a proof of claim is necessary to validate a vote.  Obviously, it

is not entirely practical to clog the bankruptcy court's docket with claims that will never be

adjudicated in the bankruptcy court.  The question is, even if it is not practical, is the procedure

required as the Objectors maintain.

Courts have determined, even when asbestos claimants are not being sent back to state court,

that proofs of claim are <u>not</u> required prior to allowing a claimant to vote.  Courts have accomplished

this in one of two ways.  Some courts have determined that a ballot fulfills the requirements of a

proof of claim.  *See, e.g., In re North American Refractories Co.*, Case No. 02-20198 (Bankr. W.D.

Pa.) (order entered January 30, 2006) (stating in procedures order that "the Court finds that the

Ballots are adequate to satisfy the Bankruptcy Code and Rule requirements for proofs of claim...");

*In re Pittsburgh Corning Corp.*, Case No. 00-22876 (Bankr. W.D. Pa.) (order entered November 26,

2003) (stating in procedures order that "the Court finds that the Ballots are adequate to satisfy the

Bankruptcy Code and Rule requirements for proofs of claim...").   Other courts have simply

permitted voting to occur without the filing of a proof of claim, without even establishing that a

ballot shall serve as a proof of claim.  *See, e.g., C.E. Thurston & Sons, Inc.*, Case No. 03- 75932

(Bankr. E.D.Va.) (order entered January 13, 2006) (in case where there was no requirement to file

asbestos proofs of claim, court allowed asbestos claimants to cast ballots);  *In re ACandS, Inc.*, Case

No. 02-12687 (Bankr. D.Del) (order entered October 3, 2003) (approving voting procedures in

which ballots were to be served on attorneys known to represent or to potentially represent asbestos

claimants without the necessity of filing a proof of claim);  *In re Porter-Hayden Company*, Case No.

02-54152 (order entered January 18, 2005) (Bankr. D. Md.) (stating in voting procedures order that

"the holders of Asbestos Personal Injury Claims shall not file proofs of claim at this time.")

The Court believes that either of the foregoing approaches may be appropriate based on the

circumstances of the case.  In the circumstances of this case, in which (i) there are thousands of

claims, (ii) there is no need to initiate or consummate a claims allowance process, and (iii) the Court

has not set a bar date, there is no need to make a specific finding that a ballot fulfills the proof of

claim requirement. The group of objections to the Procedures Motion that attacks the procedure

allowing asbestos claimants to vote without having filed a proof of claim are overruled.

> 2.      In the Circumstances of this Case, It Is Not Improper (and is within
> the Court's Discretion) to Allow a Claim for Voting Purposes Based
> on the Claimant's Determination that a Claim Exists Even Though the
> Claim is Unscheduled or the Claimant Has Not Filed a Proof of Claim

Bankruptcy Code § 502 and Bankruptcy Rule 3018 (a) permit the bankruptcy court to

estimate and allow claims for voting purposes. Under the Joint Proponents' proposed voting

procedures, Class 3 claimants will be able to self-determine that they have a claim (*i.e.*, essentially

to allow the claim themselves for voting purposes) and, based on that determination, be able to vote.

The Objectors challenge a procedure that permits a claim to be temporarily allowed unless the claim has been scheduled or the claimant has filed a proof of claim.

The practice proposed by the Procedures Motion does not run afoul of any rules or adversely impact the rights of any party. Instead, this procedure complies with Bankruptcy Rule 3018 (a) which gives the Court latitude to temporarily allow a claim "in an amount which the Court deems proper for the purpose of accepting or rejecting a plan." Bankruptcy Rule 3018 (a). The statutory predicate for Rule 3018(a) is §502(c) of the Code, which allows for the estimation of any contingent or unliquidated claim, the fixing or liquidation of which would unduly delay the administration of the case. *In re Ralph Lauren Womenswear, Inc*. 197 B.R. 771, 775 (Bankr. S.D.N.Y. 1996). Neither the Bankruptcy Code nor the Rules dictates any method for estimating claims; estimation is therefore committed to the reasonable discretion of the court as befits the circumstances of the case. *See In re Hydrox Chemical Co.,* 194 B.R. 617, 623 (Bankr.N.D. Ill.1996).

The two-step practice of allowing mass tort claimants to cast a ballot and temporarily allow a claim for voting purposes based on that ballot is within this Court's discretion under §502(c) of the Bankruptcy Code and Bankruptcy Rule 3018 (a) and is regularly employed in mass tort cases with a large number of unliquidated claims. *See, e.g.*, *In re Porter-Hayden Company*, 02-54152 (Bankr. D. Md.); *In re ACandS, Inc.*, Case No. 02-12687 (Bankr. D.Del). This objection to the Procedures Motion is overruled.

3.      It Is Not Appropriate to Refuse to Recognize the Claims and Voting
        Rights of "Non-Manifesting" Asbestos Victims

The Procedures Motion contemplates that any "asbestos victim" who has been exposed to an asbestos-containing product (as defined by the ballot and plan) may vote, even if asbestos injury

has not yet <u>manifested</u> itself.  The Objectors challenge this procedure and take the position that it is appropriate for only those with manifested injury to vote. Objectors are incorrect. It is undisputed that the overwhelming majority of the asbestos claimants have filed suit against the Debtor in the Circuit Court for Baltimore City.   The Objectors point out that there is a practice in the Circuit Court for Baltimore City by which asbestos cases are placed on an "inactive docket" when they are filed and that the burden is on the plaintiff/claimant to have the case removed from the inactive docket.   The Objectors assert that many cases languish on this "inactive docket" because the plaintiffs in these cases have not yet manifested any injuries from asbestos exposure; thus, they have no triable damages issue, no case, and no cognizable claim.  These claimants, the Objectors assert, should not be permitted to cast a ballot with respect to the proposed plan.  Citing Third Circuit decisional law, the Objectors assert that these claimants merely hold a "demand" and not a claim. *See In re M. Frenville Co.,* 744 F.2d 332 (3d Cir.1984), *cert. denied,* 469 U.S. 1160 (1985).

The Objectors make too much of the so-called "inactive docket."  The Objectors attempt to elevate what appears to be simply a procedural device that the state court has implemented for control over its docket into a substantive determination of whether a claim exists.   Such an overreaching interpretation of this procedural designation also transgresses the settled law in this Circuit.  A claim arises upon exposure, not manifestation.  *See Grady v. A.H. Robins Co.*, 839 F.2d 198 (4th Cir. 1988). This objection to the Procedures Motion is overruled.

4.      The Self-Certification Features of the Ballot Appropriately and
        Sufficiently Validate the Existence    of a Claim Against this Debtor
        and Preserve all Parties' Rights to Oppose Claims in an Appropriate
        Forum

The Procedures Motion contemplates that all claims set out in ballots will be allowed for

voting purposes at one dollar per claim/vote, and that this claim/vote is "allowed" solely upon the

claimant's submission of a ballot that contains a certification. (The Court does not review the

specific claim for voting purposes - - the claimant "self-certifies" it.)

The Objectors raise two objections to the self-certification of claims called for by the

Procedures Motion: First, they assert that the proposed balloting process is defective because it does

not require an asbestos claimant to assert that he or she has a claim against *this Debtor*.  Second,

they argue that this proposed procedure "entirely excludes the Court and other parties in interest

from the process of evaluating a claimant's assertion that he or she has a claim and is entitled to

vote," and thereby deprives "any opportunity for other parties in interest to object to the claim."

A reading of the Class 3 ballots indicates that a claimant *is* required to certify under penalty

of perjury that he or she holds a claim against *this Debtor*.  Paragraph 2 of the Class 3 Ballot requires

the claimant to certify that he or she has an "Unliquidated Asbestos Claim" as defined by the plan.

That definition in the plan leads the reader to the definition of "Asbestos Claim" which specifies that

the claim or demand must be caused by products installed, sold, handled, made (etc.) by the Debtor.

Accordingly, contrary to what the Objectors contend, the ballots do require claimants to certify that

they have a claim against this Debtor and this objection to the Procedures Motion is without merit

and is overruled.

As to their second self-certification objection, the Objectors appear to lose sight of the fact that the Class 3 claims are only being allowed for voting purposes. They will not be adjudicated by the bankruptcy court, and there is no reason, as the Objectors suggest, to hold hearings, complete with evidence and argument, as to the value of asbestos claims. Parties in interest will retain their rights to object to the substantive asbestos claims asserted against the Debtor. The proposed plan merely maintains the status quo and allows the claimants to continue to pursue whatever claims the claimants had, in whatever form and forum they had them, prior to the filing of the Debtor's bankruptcy petition. There is no need to adjudicate claims once in the bankruptcy court for voting purposes and to adjudicate the same claims again in the state court for allowance purposes. The self-certification of asbestos claims in ballots for voting purposes is appropriate in these circumstances and this objection to the Procedures Motion is overruled.

> 5.    It is Not Inappropriate to Permit Duly-Authorized Counsel to Cast "Master" Ballots on Behalf of Asbestos Claimant Clients

The Procedures Motion contemplates that Class 3 claimants who are represented by counsel will be sent solicitation materials, including a ballot in the form of a master ballot, to be sent to their asbestos counsel.[6] The Class 3 master ballot requires that the claimant be identified by name, address and social security number, that the claimant's vote be indicated, and that counsel certify that (i) the claimant has a Class 3 Claim, (ii) counsel has been authorized to vote to accept or reject the plan on behalf of each indicated holder of a Class 3 Claim and (iii) each asserted Class 3 claim holder has been exposed to an asbestos-containing product such that the claimant holds an

---

[6] The Joint Proponents provide a form of ballot to be sent to Class 3 claimants directly - this form of ballot is to be used for claimants who are not represented by counsel or who are represented by counsel but who opt to receive solicitation materials and a ballot individually.

12

Unliquidated Asbestos Claim as defined by the proposed plan.

The Objectors assert that unless the plan solicitation materials are sent to each individual asbestos claimant directly, asbestos counsel may cast ballots on the proposed plan without their clients' "knowledge, approval or participation." *See Maryland Casualty's Objection* at 27. The Objectors also complain that there is an inherent conflict between the interests of the "immediately injured" clients, and the interests of the clients who have been exposed to asbestos but have not yet manifested disease. The Objectors argue that asbestos counsel typically represent both types of claimants and therefore would be placed in an untenable position of conflict by trying to vote on the proposed plan on behalf of clients with opposing interests. Accordingly, the Objectors claim, counsel should not be permitted to vote.

The Court acknowledges the potential for an inherent conflict between present and future manifesting claimants. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 (1997) (declining to certify class because named plaintiffs did not fairly and adequately represent all parties in the class; goals of currently injured plaintiff "tug[] against" goals of "exposure only" plaintiffs). It is a great leap however, and one that does a great disservice to counsel in this case, to assume that in the face of potential tensions (and there has been no evidence here that such representations or tensions even exist) that counsel will shirk responsibilities to clients, ignore the code of professional conduct and take maverick action motivated solely by self-interest. The Court will not make this assumption, and will not make this finding without evidence.

Along these same lines, the Objectors contend that it is meaningless that no asbestos claimants have come forward to object to the voting and solicitation procedures, because, the Objectors suggest, asbestos counsel probably has failed to inform their clients of the pendency of

this motion, and perhaps even of the pendency of this bankruptcy case. Again, this position assumes that asbestos counsel is not fulfilling professional responsibilities and either is not communicating with client about the status of this bankruptcy case or that the clients have not squarely placed responsibility and authority into counsel's hands. There is simply no evidence that asbestos counsel has not communicated with or that agreements between asbestos clients and counsel have been breached in any way. In addition, it bears noting that the procedures set forth by the Joint Proponents contemplate that the date, place and time of the confirmation hearing, as well as the deadline to file objections to the confirmation of the proposed plan, will be published in two newspapers of general circulation. Publication will serve as a backstop to ensure that any asbestos claimants that did not receive notice any other way will receive notice that is reasonably calculated to reach them. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950) (finding that due process requires notice, "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their claims.")

The use of master ballots in mass tort cases is a long-standing procedural mechanism that has been employed almost as a matter of course. *See, e.g., In re Porter Hayden Company, supra; In re Federal-Mogul Global, Inc.*, Case No. 01-10578 (Bankr. D. Del.) (entered June 14, 2004); *In re USG Corp., et al.*, Case No. 01-2094 (Bankr. D. Del.) (entered April 7, 2006); *In re North American Refractories Co., supra; In re C.E. Thurston & Sons, Inc., supra; In re Pittsburgh Corning Corp.*, *supra*; *In re Owens-Corning, et al.*, Case No. 00-03837 (Bankr. D. Del.) (entered December 2, 2003); *In re Armstrong World Industries, Inc., et al.*, Case No. 00-4471 (Bankr. D.Del.) (entered June 2, 2003). The Objectors contend that these cases are not a representative survey, but rather

showcase primarily the work of a single bankruptcy judge - - Judge Judith Fitzgerald of the United

States Bankruptcy Court for the Western District of Pennsylvania, who also sits by designation in

the District of Delaware.  It is true that many of these decisions are Judge Fitzgerald's work, but this

does nothing to weaken the persuasiveness of this decisional law.  The use of master ballots in these

cases was endorsed by an experienced knowledgeable judge who has enormous experience in

handling mass tort bankruptcies.  As noted, other courts such as this Court in *Porter-Hayden, supra*,

and the United States Bankruptcy Court for the Eastern District of Virginia in *C.E. Thurston & Sons,*

*supra*, have also endorsed the use of master ballots.  This Court believes that the master ballot

approach is fair and reasonable in the context of this 19,000 claim asbestos case.

The Objectors next argue that if the Court determines (as it does) that the use of master

ballots is appropriate in this case, then asbestos counsel who will cast those ballots should be

required to produce a specific instrument from each asbestos client demonstrating that each client

specifically has authorized his or her counsel to vote on this proposed plan.  They maintain that a

general pre-petition power of attorney is not good enough.  Again here, the Objectors question

whether counsel in this case will act properly with respect to their clients' interests.  They argue that

unless counsel is required to produce a specific authorization, counsel may not inform their clients

about the case or act in their best interests if they have already been authorized to act.

Ostensibly in support of their position, the Objectors point to the existence of the Stipulation

Regarding Powers of Attorney Held by Certain Law Firms Representing Asbestos Claimants

Against Debtor which is of record in this case [docket item 311] (the "Joint Stipulation").  A review

of the Joint Stipulation, reveals however, that the asbestos claimants in this case have authorized

their counsel to act on their behalf in the bankruptcy case.  The Joint Stipulation was  entered into

among the Debtor, the Committee, Maryland Casualty and OneBeacon. It resolves certain discovery issues and, significantly, it also attaches agreements entered into by asbestos counsel representing a large number of asbestos claimants as to the scope of authority granted to them by their clients. The Joint Stipulation contains exemplars of agreements between counsel who represent a significant number of asbestos claimants in these cases and their individual clients. These agreements expressly authorize the attorney to "vote on any question that may be lawfully submitted to creditors of any company which has filed for reorganization under chapter 11 of the Bankruptcy Code..." *see Exhibits A, B and D* to Joint Stipulation.

Another safeguard exists. The master ballots that the Joint Proponents intend to use will require an agent to state that the agent has authority to act on behalf of the claimant. *See* ¶ 17 of the master ballot. Also, the master ballots are to be executed "under the penalty of perjury." *Id*. With these safeguards in place, and no improprieties evident, the Court concludes that the use of master ballots is appropriate here. This objection to the Procedures Motion is overruled.

6.    It Is Appropriate in the Context of this Case, at this Juncture, to Allow Personal Injury Claims Temporarily in the Amount of One Dollar per Claim for Voting Purposes

The Procedures Motion contemplates that the claim of each (unliquidated) Class 3 personal injury claimant who casts a ballot be temporarily allowed for voting purposes in the amount of one dollar. The Objectors contend that the Court cannot allow the valuation of all Class 3 claims at one dollar because it would "write out" of the Code the requirement in §1126(c) that a class approve a plan by a vote of at least two-thirds in dollar amount of the allowed claims in that class. An objection of this nature typically arises in a case in which asbestos claimants are to be paid from a

trust pursuant to a TDP.  Seriously-injured claimants object because their claims are to be allowed

for voting purposes in the same amount as claimants whose injuries have not yet manifested.  In

these types of plans, the "one dollar/one vote" procedures are questionable.

In this case, however, no asbestos claimants have appeared before the Court asserting that

they are being disenfranchised by the proposed voting procedures.  To the contrary, the Committee,

which has a fiduciary duty to Class 3 creditors, supports, and is a joint proponent of, these voting

procedures.  The reality is that this issue may and probably will never become ripe.  Once the actual

votes come in and the percentage of the Class 3 claimants that vote in favor of the proposed plan is

calculated, there may be no actual controversy on this point.  *See, e.g., Kane v. Johns-Manville*, 843

F.2d 636 (1988) ("Similarly, Kane was not prejudiced by the assignment of a one dollar value to

each claim.  If we make the reasonable assumption that the percentage of claims that are valid is the

same for 'yes' votes and 'no' votes, then the 'no' votes would have to be at least ten times larger on

average than the 'yes' votes in order to change the result from what occurred with the equal

weighting of each vote.  Nothing in the record gives any indication that such a large variation in

claims existed, much less that the 'no' votes were the larger claims.").  *See also, In re A.H. Robins*

*Co., Inc.,* 880 F.2d 694, 698 (4th Cir. 1989) (refusing to decide personal injury claimant's challenge

to voting procedures that valued personal injury claims at nominal amount for voting purposes

because actual vote was 94.38% in favor of the plan).  A "wait and see" approach was also adopted

by the court in *In re Quigley Company, Inc*., Case No. 04-15739 (Bankr. S.D.N.Y) (entered January

23, 2006).  In *Quigley*, over the objections of asbestos claimants, the court preliminarily and

temporarily allowed each asbestos claims at one dollar for voting purposes. After the votes came in,

the *Quigley* court looked behind the vote and (after discounting settled claims by 90% - - the amount

that certain pre-petition asbestos claimants received) and after assigning values to each claim based on the controlling TDP, the *Quigley* court determined that the actual percentage of accepting votes was only 65%, just shy of the two-thirds in amount requirement. *See Quigley, supra.*

There are no claimants before the Court who object to the one dollar/one vote procedure. This is not an asbestos case in which claimants who have claims that have been settled and paid to a significant degree are classified in the same class with claimants who retain large and unsettled claims against the Debtor. If, however, a situation were to arise in which the actual vote of the Class 3 claimants could be subject to mathematical challenge, the Joint Proponents have a contingency plan. There is language at page 7 of each master ballot providing that each master ballot shall include an attachment with a designation of disease category for each holder of an Unliquidated Asbestos Claim. Using this information, if the Court later determines that it is necessary, a calculation pursuant to §1126(c) of the Bankruptcy Code could be performed.

At this juncture in the case, however, because (i) this is not a plan that purports to make a distribution to asbestos personal injury creditors based on a pre-determined disease level, (ii) no asbestos personal injury claimants object to the one dollar/one vote procedure and (iii) it is mere speculation at this juncture that the allowance of these claims in a nominal amount for voting purposes will have any effect whatsoever, this objection to the Procedures Motion appears to lack merit, is at least premature, and is overruled.

7.    The Proposed Confirmation Schedule Does Not Accommodate
      <u>Discovery and Trial Preparation Needs and Must Be Revised</u>

The Objectors contend that certain of the proposed deadlines do not allow sufficient

opportunity to take discovery, draft and respond to confirmation objections and prepare for a

contested confirmation hearing.   They point out that (i) a confirmation hearing 90 days after

approval of the disclosure statement (as proposed) does not allow sufficient time for discovery and

the date of the confirmation hearing should be tied instead to the close of discovery, and (ii) the

filing of confirmation objections and responses should be tied to the completion of confirmation-

related discovery.

The Court agrees.   Accordingly, the parties shall confer and within 15 days of the date of

the entry of this Order shall submit an order with a revised timetable that incorporates the foregoing

concepts.

<u>Conclusion</u>

As a general proposition, the Objectors argue that the Procedures Motion improperly exalts

efficiency over legal rights.  Although efficiency is an important concern in bankruptcy, it would

be impermissible to elevate administrative and cost efficiencies over rights such as effective notice

and meaningful voting processes. *Century Indem. Co. v. Congoleum Corp.*, 426 F.3d 675, 693 (3d

Cir. 2005) ("efficiency" in asbestos cases "must not be obtained at the price of diminishing the

integrity of the process.")   It may well be true, as the Debtor has pointed out, that it would be

"impractical" for the estate to incur the estimated $200,000 in costs associated with service of the

voting packages to each individual asbestos claimant.  Practicality and cost aside, if asbestos

claimants had been entitled to receive individual solicitation packages in order to protect their rights,

the Court would have so ordered. For the reasons stated above, the Court finds that the rights of

claimants and other parties in interest are sufficiently protected by the solicitation and voting

procedures set out in the Procedures Order and that the procedures proposed are consistent with the

requirements of the Bankruptcy Code.  Accordingly, except as stated herein, the objections to the

Procedures Motion are overruled.

A separate order will issue, the proposed form of which will be submitted by the parties.


cc:
      Mark J. Friedman, Esquire
      David B. Salzman, Esquire
      Paul M. Nussbaum, Esquire
      Mark D. Plevin, Esquire
      Michael F. Brown, Esquire


**END OF MEMORANDUM**