

NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| In re: | ) |
| | ) Case No. 06-13250-NVA |
| LLOYD E. MITCHELL, INC., | ) |
| | ) Chapter 11 |
| Debtor. | ) |
| | ) Judge Alquist |
| | ) |

### MEMORANDUM ORDER GRANTING JOINT CONSENT MOTION [dkt. 1172] FOR RELIEF FROM THE AUTOMATIC STAY TO PERMIT THE JOINT MOVANTS TO PERFORM  OBLIGATIONS UNDER AND TO IMPLEMENT SETTLEMENT AGREEMENT

The Court has for its consideration the Joint Consent Motion [dkt. 1172] for  Relief from the Automatic Stay to Permit the Joint Movants to Perform Their Obligations Under and to Implement Their Settlement Agreement (the "Instant Stay Relief Motion") filed by Maryland Casualty Company ("Maryland Casualty"), The Travelers Indemnity Company ("Travelers") (together, the "Insurers"),  Lloyd E. Mitchell, Inc. the debtor herein ("LEM" or the "Debtor") and the Law Offices of Peter G. Angelos, P.C. on behalf of certain clients with asbestos-related claims (the "Angelos Firm") (filing parties collectively, the "Movants").  Oppositions [dkts. 1181 and 1189]

to the Instant Stay Relief Motion were filed, respectively, by the GME/Cuniff Plaintiffs and The Law Offices of Peter T. Nicholl (the "Nicholl Firm") (together, the "Objectors").[1] Based on a hearing held, the papers filed and the entire record in this case, the Court has determined that the Instant Stay Relief Motion should be granted.

<u>Background</u>

The Debtor is a Maryland corporation that formerly operated a mechanical contracting business in the Baltimore metropolitan area.  Since it ceased operations in 1976 and liquidated its operating assets, it has been primarily consumed by defending against asbestos-related personal injury claims and dealing with insurance coverage issues relating thereto.   The extent to which insurance policies written by Maryland Casualty provide coverage for asbestos claims is the subject of litigation in the Circuit Court for Harford County, Maryland (the "Harford County Litigation").  Additional parties have joined in the Harford County Litigation in order to preserve and protect their rights, including a putative class of asbestos personal injury claimants, as well as additional insurers.  As this Court understands it, the Harford County Litigation presided over by the Honorable William O. Carr, is in some state of being certified as a class action lawsuit.

---

[1] The record in this case reflects that the Nicholl Firm represents approximately 9,500 of the pending asbestos claims against the Debtor and the Angelos Firm represents approximately 8,600 of the pending claims.  Together, these two firms represent 90% of the asbestos claims against the Debtor.  The record does not reflect the amount or number of claims held by the GME/Cuniff Plaintiffs.  The Objectors are not participants in the Settlement Agreement that is pending before the Court.

The Initial Stay Relief Motion

This is the second time that the Movants have come before this Court requesting that the stay be lifted in order to permit them to consummate a settlement agreement. The first time the Movants came to the Court requesting stay relief, the Movants filed a Joint Motion [dkt. 1071] for Limited Relief from Stay (the "Initial Stay Relief Motion"). The Initial Stay Relief Motion was also opposed by the Objectors. The Initial Stay Relief Motion stated that the Movants had entered into a settlement agreement (the "Settlement Agreement") that would resolve more than 9,000 outstanding Asbestos Claims against the Debtor (the "Settling Claims").[2] The Settlement Agreement would also resolve Maryland Casualty's outstanding claims against the Debtor for reimbursement and breach of an earlier settlement agreement between the parties.[3] In addition, the Settlement Agreement would resolve a number of other matters that are pending in this bankruptcy case including the (1) Joint Motion of Debtor and Official Committee of Unsecured Creditors to Dismiss Chapter 11 Case [dkt. 883], (2) the Cross Motion [dkt. 909] to Appoint Trustee filed by Maryland Casualty and (3) the Insurers' Joint Liquidating Plan [dkt. 908].[4]

---

[2] The Settlement Agreement that was the subject of the Initial Stay Relief Motion is the same Settlement Agreement that is the subject of the Instant Stay Relief Motion.

[3] LEM commenced this bankruptcy case in accordance with terms of a pre-petition settlement agreement it had reached with Maryland Casualty. LEM filed a motion seeking Court approval of that settlement. Before that motion was heard, LEM backed out of the settlement and shifted allegiance. The Debtor then began cooperating with the Creditors Committee that appeared to oppose the settlement. The Creditors Committee is comprised of, among others, the claims represented by the Angelos Firm and the Nicholl Firm.

[4] As a collateral matter, the resolution of this motion in favor of the Movants also resolves the Motion [dkt. 1186] for Leave to File Out of Time Opposition by the Nicholl Firm to the Motion to Dismiss. The Motion to Dismiss has been pending since May 6, 2009. On November 12, 2010, the Nicholl Firm announced that it intended to file an opposition "promptly" following that hearing. Because a dismissal of the bankruptcy case is part of the settlement and because there has been no just reason for the delay,

In the Initial Stay Relief Motion, the parties sought very specific relief: (1) they sought permission to submit the Settlement Agreement for Approval to the Circuit Court for Baltimore City[5] for a determination if the amounts proposed to be paid to the settling claimants are fair and reasonable, (2) if approval was obtained from the Baltimore City Court, they next sought leave to go to Judge Carr to request permission to dismiss the claims they have against each other in the Harford County Litigation, including the claims for coverage by the settling asbestos claimants, and (3) they sought to pay the claims being settled.

The Court held an evidentiary hearing on the Initial Stay Relief Motion.  Subsequently, the Court issued a Memorandum Order [dkt. 1135] granting limited relief to the Movants (more limited than what had been requested.)  The Court lifted the stay to permit the Movants to seek the approval of Judge Carr in the Harford County Litigation as to the fairness and appropriateness of the Settlement Agreement, and also to seek the approval of the Circuit Court of Baltimore City of the terms of the payment of the individual claims.   The Court did not authorize any claims to be *paid* at that time.

The Court determined that this was the appropriate course of action because the best interests of all creditors must be considered and balanced, especially where mass tort claims and potentially limited insurance proceeds are involved.  The Court limited the relief it granted, and refused to allow the claims to be paid at that time, because it was concerned about the plight of the non-settling claimants who would be left to litigate their claims, but who might not have adequate or equal

the Court will deny Motion [dkt 886] for Leave to File Out of Time Opposition by separate order.

[5] The asbestos personal injury actions against the Debtor are pending in the Circuit Court for Baltimore City.

insurance coverage available to them to pay their claims after payment had been made to settling claimants.  Simply put, the insurance coverage might have been exhausted.

This Court determined that the most appropriate court to pass on the fairness of the coverage issues and insurance-related aspects of these matters was the Harford County Court.  The Harford County Court is familiar with the coverage issues and this litigation, and is in some stage of determining whether the Harford County Litigation should be certified as a class action  Additionally, because the individual claims were pending in the Baltimore City Circuit Court, that court had specialized knowledge as to individual claims and personal injuries, and the appropriate compensation levels.  Moreover, the Settlement Agreement itself required the imprimatur of those two courts. Accordingly, this Court lifted the stay to allow the Harford County Circuit Court and Baltimore City Circuit Court to approve the terms of the proposed Settlement Agreement.  The parties then proceeded to seek and obtain the approval of those courts.

<u>The Instant Stay Relief Motion</u>

Approximately one year after the Court issued its Memorandum Order [dkt.1135] granting the Initial Stay Relief Motion (the "Initial Stay Relief Order"), the Movants filed the Instant Lift Stay Motion.  The Instant Lift Stay Motion describes the Movants' efforts to comply with the conditions set forth in the Initial Stay Relief Order.  In this regard, the Movants obtained an order approving the settlement terms from each of the two state courts.  Over the opposition of the

Objectors, the Movants obtained an order from Judge Carr in the Harford County Litigation. The Movants also obtained, under seal, an order from the Baltimore City Court. The Movants now return to this Court to seek authorization to consummate the Settlement Agreement, including the payment of claims.

The Standard for Relief from the Automatic Stay

Pursuant to § 362 (d) (1) of the Bankruptcy Code, the Court may grant relief from the automatic stay for cause. The determination as to whether the stay should be lifted is within the discretion of this Court. *In re Robbins*, 964 F.2d 342 (4th Cir. 1992). Because "cause" is not defined in the Bankruptcy Code, the Court must determine what constitutes cause on a case-by-case basis. *Id.* To do this, the Court is tasked with balancing the competing interests of and prejudice to the parties. *See*, for example, *In re Sonnax Industries, Inc*., 907 F.2d 1280 (2nd Cir. 1990). As the parties seeking relief from the stay, the Movants bear the initial burden of showing that cause exists to modify the stay. Only if the Movants are able to make this initial showing of cause does the burden then shift to the party opposing the relief from stay. *In re Enron Corp*., 306 B.R. 465 (Bankr. S.D. N.Y. 2004). Once the Movants fulfill their initial burden of showing that "cause" exists, the ultimate burden shifts to the non-movant to demonstrate why the stay should remain in place. *In re Busch*, 294 B.R. 137 (B.A.P. 10th Cir. 2003).

The Movants argue that cause exists to lift the stay to allow them to consummate the Settlement Agreement because the Settlement Agreement will (1) resolve more than 9,000 asbestos claims against the Debtor, (2) resolve all insurance coverage claims related thereto, (3) resolve Maryland Casualty's multi-million dollar claim against the Debtor, and (4) resolve the Motion to Appoint a Trustee pending in this Court, as well as the Motion to Dismiss pending in this Court.

6

The Settlement Agreement will not resolve the asbestos claims of any non-settling asbestos claimants, including the claims of the Objectors.  The non-settling claimants will be free to pursue their claims against the Debtor and to argue that insurance coverage remains available to cover their claims.  The Settlement Agreement does not require that the *estate* pay any funds - - all of the funds are to be paid by the settling insurance companies.

As noted in the Initial Lift Stay Order, the Court is not authorized to marshall the proceeds of the insurance policies for the benefit of all creditors and to create a general estate thereby.[6] Instead, this Court must balance the equities and the competing interests of all parties.  Because of the involvement of the Harford County Court, in the insurance coverage issue, and the Baltimore City Court, in the individual asbestos claims, this Court declined to pass on the equities without those courts having had the opportunity to determine the fairness of the Settlement Agreement. Those courts have now had this opportunity and their determinations are discussed herein.

## The State Court Orders

After this Court issued the Initial Stay Relief Order, the Movants returned to state court to do as this Court directed.  Thereafter, Judge John M. Glynn of the Circuit Court for Baltimore City issued an order (the "Baltimore City Order") approving the settlement as embodied in the Settlement Agreement.  Judge Glynn found that the settlement is fair and reasonable to the settling claimants. The Baltimore City Order is under seal.

---

[6] It is noted that although some asbestos bankruptcy cases have involved the establishment of a trust under 11 U.S.C. § 524 (g), LEM cannot satisfy what has been described as the "ongoing business requirement" which is a predicate to the establishment of such a trust because LEM has no ongoing business. *See, e.g., American Capital Equipment, LLC*, 688 F.3d 145, 1 (3rd Cir. 2012) *citing, In re Combustion Engineering*, 391 F. 3d 190, 248 (3rd Cir. 2004).  *See also, In re Quigley Co., Inc*., 437 B.R. 102, 123 (Bankr. S.D.N.Y. 2010).

Judge Carr of the Circuit Court for Harford County also addressed the aspects of the settlement agreement pertinent to the matters in that court and issued a memorandum opinion (the "Harford County Memorandum Opinion").  In it, Judge Carr determined that the settlement would not prejudice non-settling asbestos claimants because they remained "free to litigate the issue of the scope of coverage for these asbestos claims" and could "continue to argue that their recovery is not subject to any limits because they are not asserting product hazard claims or completed operations claims."  *Harford County Memorandum Opinion* at 14.  Judge Carr determined that the settlement actually would benefit the non-settling claimants because they would no longer be impeded by the bankruptcy stay.  *Id.* at 14 - 15.

The Harford County Memorandum Opinion is not a superficial treatment of the coverage issues or of the issues confronting the non-settling claimants.  It is a sixteen-page, single-spaced document that includes a thorough analysis of the background of the Debtor, the insurance coverage issues, and the arguments raised by the insurance companies and the non-settling defendants.  In addressing the fairness and appropriateness of the settlement, the Harford County Court was cognizant of the importance placed upon its findings by this Court.  It quoted this Court's finding that the Harford County Court was "uniquely qualified to judge the fairness and appropriateness of the settlement agreement because the class action proceedings started there."  *Harford County Memorandum Opinion* at 5.

8

The Harford County Court discussed applicable Maryland law and determined that where, as here, a class action procedure has been commenced but has not yet resulted in certification,[7] the requirements of a court in passing upon a settlement are to determine that (1) there was no collusion and (2) the settlement does not prejudice the ability of the non-settling claimants to have their claims adjudicated. *Id*. at 6, *citing Shelton v. Pargo*, 582 F.2d 1298 (4th Cir. 1978). The Harford County Court found that there was no collusion with respect to the settlement and found that there was nothing to suggest that any of the settling parties agreed to settle in order to obtain a benefit greater than they would have received absent the agreement. *Harford County Memorandum Opinion* at 14.

The non-settling claimants were on notice of the settlement. (The Harford County Court noted that the Objectors had tried to block the settlement during the Initial Lift Stay process in this Court and then again during the Harford County phase of this process). The Harford County Court determined that the settlement process does not prejudice to the non-settling claimants because (1) they have their own counsel, (2) the settlement does not affect their rights to litigate their claims in state court, (3) the settlement does not contain a release by the Debtor of any rights to insurance or insurance coverage, and (4) these claimants can pursue their claims and assert coverage for those claims after the settlement.

---

[7]The Harford County Memorandum Opinion explains that, at the time of its issuance, a class had not been certified in that litigation. Maryland Casualty had earlier moved to certify a class of plaintiffs (and had named Rudacille and Griffin as putative class representatives) and Travelers opposed class certification. Other parties joined the motion to certify and also joined the opposition. *See Harford County Memorandum Opinion* at 3. After Travelers and Maryland Casualty entered into the Settlement Agreement, they sought the approval of that agreement by the Harford County Court. The motion was opposed by claimants Gattus, Miller, Thomas and Schroeder, all of whom are non-settling claimants.

With regard to the argument made by the Objectors that the settlement would or could result in the exhaustion of policy limits, the Harford County Court pointed out that this issue "has existed for decades and was not created by this settlement agreement." *Id.* at 8. Judge Carr discussed in detail the "policy limits" issue including the "per occurrence limits" and "aggregate limits" issues that the non-settling claimants are actively litigating with the Insurers.[8] The Harford County Court found that the Settlement Agreement does not foreclose the non-settling claimants from continuing to pursue their argument against the Insurers. The Harford County Court stated:

> [Objectors] argue that they may lose on the issue of whether the limits apply and therefore settlement should be prohibited because if the limits do apply nothing will be left to pay their clients. That a settlement by some of the parties will result in a smaller pot for the rest of a multi-party action is always an issue for multi-party cases, but settlement is still the favored outcome."

*Harford County Memorandum Opinion* at 11.

The Harford County Court further found that, in order to sustain an objection to the settlement, it would essentially need to find against the Objectors, and find that aggregate policy limits apply. It refused to speculate that it would rule against the Objectors on an issue that was currently being litigated, and concluded that a pre-determination of the outcome of pending litigation would be "speculative." The court refused to block the settlement on the basis of speculation. *Id.*

The thrust of the Objectors' argument in this Court appears to be two-fold: that Judge Carr applied the wrong standard by using *Shelton, supra,* and that Judge Carr erred in his decision because he did not have the benefit of all the terms of the settlement (including amounts to be paid

---

[8]  For example, the non-settling claimants argue in Harford County Court that their claims are not subject to the Maryland Casualty policy's aggregate limit of $26 million because per occurrence limits and not aggregate limits apply for asbestos claims.

to individuals which amounts were disclosed to the Baltimore City Court and placed under seal).
*See Opposition by the Nicholl Claimants to Joint Consent Motion for Relief from Automatic Stay*
at 7 - 9.

The Objectors have cited a number of decisions in support of their position that Judge Carr
employed the wrong standard.  The cases cited by Objectors are, however, cases which repose in
a significantly different posture - - they are cases in which a class action has actually been certified.
*See, e.g., In re Microsoft Corp. Antitrust Litigation*, 332 F.Supp. 2d 890 (D. Md. 2004); *Dotson v.
Bell Atlantic-Maryland, Inc*., 2003 WL 23508428 (D.Md. 2003); *Goldenberg v. Marriott PLP Corp*.,
33 F.Supp. 2d 434 (D.Md. 1998).   Judge Carr determined that a different standard is applicable
where no class had yet been certified, as in the Harford County Litigation.  This Court does not and
cannot act as an appellate court for the Harford County Court, nor dictate to that court the standard
it should use.  The Harford County Court recognized this. ("The Bankruptcy Court order directing
approval of the settlement agreement in this case does not dictate the standard to be applied in doing
so, and it probably had no authority to do so.  The Bankruptcy Court requires this court to consider
the settlement in the context of this action, which is pre-certification of a class action.")

To the extent that the Objectors believe that the Harford County Court did not apply the
correct legal standard, their remedy is not a collateral attack of that court's order in this Court.  To
the extent that the Objectors argue that even if the correct standard was applied, that Movants did
not satisfy the standard in the Harford County Court, their remedy also lies in the state court system.
The Objectors complain that Judge Carr did not have access to the amount proposed to be paid to
the Settling Claimants.  The adequacy of *amount*, however,  was not the element of the settlement
that was before Judge Carr.  This aspect of the settlement agreement was reviewed and passed on

11

by Judge Glynn of the Baltimore City Court who *did* have access to and information about the individual claims, the expert reports and the proposed amount to be paid under the settlement on account of the claims. Judge Glynn approved this aspect of the settlement agreement.

<u>Cause Exists to Lift the Stay</u>

The automatic stay can be lifted for "cause" which is not defined by the Bankruptcy Code. Cause is determined by balancing the competing interests of and prejudice to the parties. *See*, for example, *In re Sonnax, supra.* Here, stay relief is being sought to permit implementation of a settlement with some, but not all, creditors. Among other things, the Court believes it must be satisfied that the Settlement Agreement is proposed in good faith and is fair. *See Hartford Cas. Ins. v. Dodd*, 416 F. Supp. 1216 (D. Md. 1976) (citing cases that an insurance company does not act in bad faith when it settles some claims and not others, even if settlement may reduce the amount available to others). Contrary to the position taken by the Objectors, the mere fact that the insurance carriers will settle now with some but not others, does not make the settlement unfair or demonstrate bad faith.

The Objectors seem to believe that this Court should, to achieve what they see as a fair result, re-write the terms of the insurance contracts so as to create an estate for the Debtor that can be administered by a claims process in this Court. However, the insurance contracts cannot be re-written by this Court. *See Tidewater Finance Co. v. Kenney*, 531 F3d 312 (4th Cir. 2008) (unless the Bankruptcy Code commands a contrary result in a specific instance, parties are bound to their contractual rights and obligations). The Insurers have certain rights as stated in the policies, including the right to settle claims. There is no authority that would permit the Court to force the

Insurers to pay the policy proceeds into the estate and create an estate for the benefit of all creditors. *See, e.g., In re Amatex Corp.*, 97 B.R. 220, 221 (Bankr. E.D. Pa. 1989) (bankruptcy court could not use equitable powers to compel insurance company to make lump-sum distributions to asbestos debtor contrary to terms of policy).

As contemplated by this Court in its Initial Lift Stay Order, the state court judges who preside over the asbestos claims and insurance coverage matters that were stayed by LEM's bankruptcy filing have reviewed the terms of the settlement. Judge Carr has had the opportunity to conduct a review of the Settlement Agreement and has found that it is fair in the context of the matters before the Harford County Court. Judge Glynn has approved aspects of the Settlement Agreement that pertain to the individual claims pending in the Baltimore City Court. The Movants have obtained review and approval of the courts with substantive expertise about the stayed matters, as directed by this Court.

Balancing the factors, including good faith, fairness, the parties contractual and other legal rights and the potential risks and prejudice to all parties, the Court finds that the Movants have shown that they are entitled to relief from the stay in order to consummate their Settlement Agreement, including the payment of the agreed amount of the claims.

For the foregoing reasons, it is, by the United States Bankruptcy Court for the District of Maryland:

ORDERED that the automatic stay under 11 U.S.C. § 362 (a) is hereby modified for the purposes of permitting the Movants to implement the Settlement Agreement, and to pay the claims pursuant to the Settlement Agreement.

Copies to:

Paul M. Nussbaum, Esquire
Whiteford, Taylor & Preston L.L.P.
Seven Saint Paul Street, Suite 1800
Baltimore, Maryland 21202

David B. Salzman, Esquire
Campbell & Levine, LLC
1700 Grant Building, 310 Grant Street
Pittsburgh, Pennsylvania 15219

Edmund A. Goldberg, Esq.
Office of the U.S. Trustee
101 W. Lombard St.; Suite 2625
Baltimore, MD  21201

Richard M. Goldberg, Esquire
Shapiro Sher Guinot & Sandler
36 South Charles Street, Suite 2000
Baltimore, MD 21201

David Woll, Esquire
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, New York  10017

Mark J. Friedman, Esquire
DLA Piper US LLP
6225 Smith Avenue
Baltimore, MD  21209-3600

Mark D. Plevin, Esquire
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004

Michael F. Brown, Esquire
Drinker Biddle & Reath LLP
18th & Cherry Streets
One Logan Square
Philadelphia, PA 19103

**END OF ORDER**